UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| CHS Inc., | Case No. 18-cv-1422 (WMW/ECW) |
| Plaintiff, | **ORDER** |
| v. | |
| Farmers Propane Inc., | |
| Defendant. | |

This matter is before the Court on Plaintiff CHS Inc.'s Motion for Default Judgment, (Dkt. 11), and Defendant Farmers Propane Inc.'s Motion to Vacate and Dismiss, (Dkt. 25). For the reasons addressed below, the complaint is dismissed for lack of personal jurisdiction, the Clerk's entry of default is set aside, and the motion for default judgment is denied.

## BACKGROUND

Plaintiff CHS Inc., a Minnesota corporation, conducts its business in the energy, grain, and food solutions sectors. Defendant Farmers Propane Inc., an Ohio corporation, sells propane. In or around 2013, CHS and Farmers Propane entered into an agreement (the original contract) in which CHS would sell propane to Farmers Propane on credit. After Farmers Propane failed to pay the amount due under the agreement, the parties entered into a series of subsequent contracts concerning Farmers Propane's obligation to pay CHS. The most recent contract (the Promissory Note) is the subject of this lawsuit.

CHS alleges that Farmers Propane failed to make any of the periodic payments required under the Promissory Note. CHS initiated this lawsuit on May 24, 2018, and served Farmers Propane with the summons and complaint on July 3, 2018. Farmers Propane had 21 days to file an answer or otherwise respond to the complaint. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). That deadline passed without Farmers Propane answering or otherwise responding to the complaint. CHS applied for an entry of default, Fed. R. Civ. P. 55(a), and the Clerk of Court entered default on August 27, 2018. Thereafter, CHS filed the pending motion for default judgment.

On November 6, 2018, Farmers Propane moved to dismiss CHS's complaint. The Court struck Farmers Propane's motion because it did not comply with the Local Rules. Farmers Propane subsequently filed the pending motion to vacate and dismiss on November 16, 2018.

## ANALYSIS

The parties primarily dispute whether the Court has personal jurisdiction over Farmers Propane. Because the existence of personal jurisdiction is a threshold question, the Court addresses this issue first in the context of Farmers Propane's motion to dismiss. *See Falkirk Mining Co. v. Japan Steel Works, Ltd.*, 906 F.2d 369, 372 (8th Cir. 1990) (explaining that personal jurisdiction is a threshold issue and must be addressed before the merits of a dispute).

## I. Motion to Dismiss for Lack of Personal Jurisdiction

CHS alleges that Farmers Propane has sufficient minimum contacts with Minnesota and, therefore, is subject to this Court's specific personal jurisdiction. Farmers Propane counters that CHS's proffered contacts are insufficient.

When personal jurisdiction is challenged, the plaintiff asserting the district court's personal jurisdiction over a defendant "must make a prima facie showing that personal jurisdiction exists." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591-92 (8th Cir. 2011). This showing requires the plaintiff to plead "sufficient facts to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state." *Id.* (alteration in original) (internal quotation marks omitted). Although the evidence necessary to make this prima facie showing is minimal, such evidence must withstand testing through competing affidavits and exhibits supporting or opposing the motion. *Id.* at 592. Pleadings alone are insufficient. *Id.* When deciding whether the plaintiff has succeeded in making this requisite showing, the district court views the evidence in the light most favorable to the plaintiff and resolves all factual conflicts in the plaintiff's favor. *Digi-Tel Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996).

A federal court follows state law when determining the bounds of the federal court's personal jurisdiction. *Walden v. Fiore*, 571 U.S. 277, 283 (2014). Because Minnesota's long-arm statute extends jurisdiction to the maximum limit permitted by due process, a federal court in Minnesota must determine only whether its exercise of personal jurisdiction comports with due process. *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir. 1995).

Due process requires a non-resident defendant to have sufficient minimum contacts with the forum state such that "the maintenance of the lawsuit does not offend traditional notions of fair play and substantial justice." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980) (internal quotation marks omitted). "[T]he plaintiff cannot be the only link between the defendant and the forum." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Sufficient minimum contacts exist when a defendant has engaged in an act "by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 821 (8th Cir. 2014) (internal quotation marks omitted). The nature of the defendant's contact with the forum state must be "such that [the defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen*, 444 U.S. at 297. When, as here, a plaintiff asserts that a defendant is subject to specific personal jurisdiction, a district court may adjudicate causes of action "arising from or related to the defendant's actions in the forum state." *Wessels*, 65 F.3d at 1432 n.4.

The United States Court of Appeals for the Eighth Circuit considers five factors to determine the sufficiency of a defendant's contacts with the forum state: (1) the nature and quality of contacts, (2) the quantity of contacts, (3) the relation of the cause of action to the contacts, (4) the interest of the forum state in providing a forum for its residents, and (5) the convenience of the parties. *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983). The first three factors are given "primary" importance, whereas the last two are "secondary." *See Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir.

4

2010); *accord Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996).

The alleged contacts between Farmers Propane and Minnesota are analyzed under each of the *Land-O-Nod* factors, below.

### A. Nature and Quality of the Contacts

CHS alleges several contacts between Farmers Propane and Minnesota. First, CHS relies on the original contract between CHS and Farmers Propane, which CHS contends contemplates a continuing business relationship between the parties and includes a Minnesota choice-of-law provision. Pursuant to the original contract, CHS contends, invoices were generated in and sent from Minnesota, and Farmers Propane was required to remit payments to Minnesota. Second, CHS relies on the Promissory Note subsequently executed between CHS and Farmers Propane. CHS alleges that this Promissory Note was negotiated by CHS employees in Minnesota, includes a Minnesota choice-of-law provision, and requires Farmers Propane to submit its payments to Minnesota.

To constitute sufficient quality of contacts, a defendant's acts must be "purposefully directed" to the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Daily emails and phone calls to individuals in the forum state lack sufficient quality to establish personal jurisdiction, particularly when the defendant is not authorized to do business in the forum state, does not have any offices in the forum state, and owns no property there. *See Eagle Tech. v. Expander Ams., Inc.*, 783 F.3d 1131, 1137 (8th Cir. 2015). Without more, even wire transfers to the forum state, along with scattered emails and phone calls, are not enough to establish that the defendant purposefully directed its

5

actions at the forum state. *See Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011).

The mere existence of a contract between the defendant and a party in the forum state also is inadequate to establish sufficient minimum contacts. *See Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 980 (8th Cir. 2015). Nor is a choice-of-law provision in a contract enough, by itself, to confer personal jurisdiction over a non-resident defendant. *See Fastpath*, 760 F.3d at 821-22. But when the prior negotiations of the contract, the subject and purpose of the contract, and the parties' actual course of dealing all implicate the forum state, these surrounding circumstances may be sufficient minimum contacts. *See Creative Calling*, 799 F.3d at 980-81 (finding minimum contacts when defendant actively solicited business in the forum state, engaged in daily communication with individuals in the forum state, shipped thousands of samples to the forum state, and remitted payments to the forum state); *Fastpath*, 760 F.3d at 821-22 (explaining that a choice-of-law provision, when specifically negotiated, may offer "further evidence of a defendant's deliberate affiliation with the forum").

While a defendant's physical presence in the forum "reinforce[s] the reasonable foreseeability of suit there," physical presence is not required. *Burger King*, 471 U.S. at 476 (acknowledging that it is "an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications"). A court's exercise of personal jurisdiction over a defendant that has no physical presence in the forum state is proper when, for example, the transactions at issue "involved the submission of a purchase order, the accessing of credit, and 'customer pick up' " in the

forum state. *Wells Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 519-20 (8th Cir. 2010).

In support of its arguments for exercising personal jurisdiction over Farmers Propane, CHS relies on Minnesota choice-of-law provisions and the submission of payments to Minnesota. But that is where Farmers Propane's contacts with Minnesota end. There is no indication that the parties specifically negotiated for the Minnesota choice-of-law provisions. Moreover, the subject of the original contract is a propane transaction in which CHS delivered propane to Farmers Propane in *Ohio*. Farmers Propane's subsequent sales of the propane were to customers in Ohio, Indiana, and Pennsylvania, *not* Minnesota. The Promissory Note also relates to the underlying propane transaction for Ohio delivery. And although a physical presence in Minnesota is not required, it is nonetheless relevant that Farmers Propane never traveled to Minnesota. In addition, CHS concedes that its Ohio-based sales representative "may have been the primary point of contact for Farmers Propane when it was purchasing propane." CHS's proffered contacts—the choice-of-law provisions and payments to Minnesota—are not of sufficient quality to confer personal jurisdiction over Farmers Propane. *See Eagle Tech.*, 783 F.3d at 1137; *Viasystems*, 646 F.3d at 594. That *CHS* has strong ties to Minnesota simply cannot serve as the basis for personal jurisdiction over Farmers Propane. *See Walden*, 571 U.S. at 285.

For these reasons, the first factor, the nature and quality of the proffered contacts, favors no personal jurisdiction.

### B. Quantity of the Contacts

CHS asserts that Farmers Propane's contacts with Minnesota span many years, including a contractual relationship with CHS dating back to 2013. And CHS alleges that Minnesota-based CHS employees negotiated the Promissory Note.

Daily communications with individuals in the forum state may not be enough to confer personal jurisdiction over a non-resident defendant, even when there are over 100 phone calls in total. *See Eagle Tech.*, 783 F.3d at 1137; *Burlington Indus.*, 97 F.3d at 1103. But when the regular communication persists over an extended period of time, for example 12 years, that may be a sufficient quantity of contacts to establish personal jurisdiction. *See K-V Pharm.*, 648 F.3d at 594-95.

CHS's characterization that the contracts between itself and Farmers Propane contemplated a "continuing business relationship" involving Minnesota is exaggerated. The original contract is for the sale of propane to Ohio. The Promissory Note addresses the payment schedule for that propane transaction. To the extent that the contracts contemplate any relationship between Farmers Propane and Minnesota, that relationship consists of wire transfers to Minnesota. And that contemplated relationship existed only for approximately 5 years. *Cf. id.* (finding minimum contacts when the contractual relationship was both longer in time—12 years—and the defendant "expected to have even more extensive contacts" with the forum state). Similarly, the negotiations for the Promissory Note are lacking. Nothing in the record suggests that these negotiations were

voluminous or prolonged.[1] Farmers Propane's contacts with Minnesota are not so numerous as to establish that Farmers Propane purposefully availed itself of the privileges of conducting business in Minnesota. *See Fastpath*, 760 F.3d at 821.

For these reasons, the second factor, the quantity of contacts, favors no personal jurisdiction.

### C. Relation of the Cause of Action to the Contacts

Farmers Propane's continuing business relationship with a Minnesota company, its negotiation of contracts involving Minnesota-based CHS employees, and its submission of payments to Minnesota can be traced to the Promissory Note. The Promissory Note, in turn, forms the basis of CHS's breach-of-contract claim. Although Farmers Propane disputes the *strength* of the Promissory Note's connection to Minnesota, Farmers Propane does not dispute that the Promissory Note—the source of CHS's proffered contacts—is related to the cause of action.

The third factor, the relation of the cause of action to the contacts, favors personal jurisdiction.

### D. The State's Interest in Providing a Forum

CHS argues that Minnesota has an interest in protecting its companies. But Farmers Propane counters that Minnesota's interest in protecting CHS is "minimal" because the dispute as to the Promissory Note does not strongly implicate Minnesota.

---

[1] Nor is there any suggestion that the negotiations took place in Minnesota.

Minnesota has an interest in providing a forum for its residents. But the state "has little interest in providing its citizens a forum for a dispute that has no connection to the state." *Westley v. Mann*, 896 F. Supp. 2d 775, 792 (D. Minn. 2012). The Promissory Note's connection to this state consists of a Minnesota choice-of-law provision, Minnesota-based CHS employees' negotiation of the Promissory Note, and the provision requiring Farmers Propane to make payments to Minnesota. As described in Parts I.A and I.B, these contacts, without more, lack sufficient quality and quantity. It follows that Minnesota's interest in providing a forum for this dispute is minimal. *See id.* Moreover, this is a factor of merely secondary importance in the personal jurisdiction analysis. *Johnson*, 614 F.3d at 794.

The fourth factor, Minnesota's interest in providing a forum for its residents, weighs only marginally in favor of CHS and is of limited significance.

### E. Convenience of the Parties

CHS contends that the convenience of the parties is a neutral factor because both companies have a stronger presence in their home states than in any other state. In contrast, Farmers Propane maintains that Ohio is, on balance, a more convenient forum. According to Farmers Propane, CHS has a "substantial presence in Ohio," while Farmers Propane, by comparison, has *no* presence in Minnesota. But CHS's "substantial presence in Ohio" appears to be one Ohio sales representative. Litigation in Ohio would be inconvenient for CHS nonetheless. And this factor is of secondary importance. *Johnson*, 614 F.3d at 794.

Given the strong presence of the companies in their respective home states, the fifth factor, the convenience of the parties, is neutral.

In summary, two of the three primary factors favor a determination of no personal jurisdiction. Only the third factor, the relation of the cause of action to the contacts, supports personal jurisdiction. And the final two factors, of secondary importance, either are neutral or weigh only marginally in favor of personal jurisdiction. In light of this analysis, the Court lacks specific personal jurisdiction over Farmers Propane. Farmers Propane's motion to dismiss the complaint for lack of personal jurisdiction is granted.

## II. Setting Aside Entry of Default

Along with its motion to dismiss, Farmers Propane moves to vacate the default, pursuant to Rule 60(b)(4), Fed. R. Civ. P. But there is no judgment in this case to vacate. There is merely an entry of default by the Clerk's Office. Rule 60(b)(4) is a mechanism to vacate a judgment or order, not to set aside an entry of default. *See* Fed. R. Civ. P. 55(c) (distinguishing setting aside an entry of default for good cause with vacating a default judgment under Rule 60(b)); *accord Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1042 (8th Cir. 2000). To the extent Farmers Propane seeks to vacate a judgment, that request is denied.[2]

A district court may set aside an entry of default *sua sponte* for good cause. *See* Fed. R. Civ. P. 55(c); *see also Streambend Props. III, LLC v. Sexton Lofts, LLC*, 297 F.R.D. 349, 370 (D. Minn. 2014), *aff'd*, 587 F. App'x 350 (8th Cir. 2014) (setting aside entry of default *sua sponte* because defendants had a meritorious defense and plaintiff had received

---

[2] Farmers Propane also requests that the Court stay the default pursuant to Federal Rule of Civil Procedure 62 (2018), which governs "Stay of Proceedings to Enforce a Judgment." As there is no judgment in this case, the Court denies this request.

several other opportunities to be heard on the issue). Based on the personal jurisdiction analysis contained in Part I and recognizing that CHS has had a robust opportunity to be heard by the Court on this issue, there is good cause to set aside the entry of default.[3]

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. The Clerk's entry of default, (Dkt. 9), is **SET ASIDE**.

2. Defendant Farmers Propane Inc.'s motion to dismiss or vacate, (Dkt. 25), is **GRANTED** to the extent that it seeks to dismiss the complaint.

3. Plaintiff CHS Inc.'s motion for default judgment, (Dkt. 11), is **DENIED** as moot.

4. The complaint is **DISMISSED** without prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 19, 2019  s/Wilhelmina M. Wright
　　　　　　　　　　　　　　　　　　　　　Wilhelmina M. Wright
　　　　　　　　　　　　　　　　　　　　　United States District Judge

---

[3] Because the Court sets aside the entry of default, CHS's motion for default judgment is denied as moot. Moreover, a court cannot enter default judgment when it lacks personal jurisdiction. *See Falkirk Mining Co.*, 906 F.2d at 372.